Farrow's Heirs *vs* Edmundson, &c.

ERROR TO THE MONTGOMERY CIRCUIT.

*Principal and agent.    Lapse of time.*

EJECTMENT.

Case 117.

4m 605
90   204
4bm605
110  135

June 18.

JUDGE BRECK delivered the opinion of the Court.

As the Court below declined giving the instructions to the jury, as moved on behalf of the plaintiff, but gave in lieu thereof, other instructions, designed, as we, understand, to embrace the whole law of the case, the main question for our determination is, whether, in the instructions thus given, the Court correctly expounded the law. How far the rights of the parties are affected by the operation of the statutes of limitations, constituted the most important question upon which the Court was called upon to instruct the jury.

We will first give our views in reference to this question and then notice more particularly the instructions of the Court. If, as the testimony conduces to prove, Col. Farrow entered and took possession of the land in controversy as the agent of his uncle, Capt. Farrow, he thereby became subject to the rules and principles of law applicable to the relation of landlord and tenant. It is true, in some instances his acts may have been consistent and proper in his character as agent, when they would have been otherwise had he occupied the attitude of a tenant merely. But the nature and bearing of such acts on the case, will be noticed hereafter.

*If one take possession of land as agent, the relation of landlord and tenant is thereby established, and the law applicable to landlord and tenant governs the relation, and while the possession is held the title of the principal cannot be controverted by the agent.*

There is no rule of law better settled than that the tenant cannot controvert, while he continues in possession, the title of his landlord; and upon this principle he is not permitted to set up against the title of his landlord, adversary titles which he may have acquired in himself, or which may be in third persons. These rules are unquestionably applicable to Col. Farrow and those claiming under him; neither he nor they could protect their possession by merely showing in themselves, or in others, adversary titles, elder or paramount to the title of Capt. Farrow. Such titles could not alone be successfully re-

lied upon by the defendants in this case, in bar of tho plaintiff's action. Wherever the statute of limitations would bar a right of entry in Capt. Farrow or his heirs, the evidences of such elder adversary titles would be unnecessary; the bar would be as complete without them as with them. Not for the purpose of showing an elder adverse title therefore, but for other purposes which will be suggested hereafter, such evidences might be competent as testimony.

The relation of landlord and tenant ceases to exist upon notice given by tenant, that he claims to hold in his own right, and right of entry in the landlord commences.

When the statute of limitations commenced running in favor of Col. Farrow and those claiming under him, and against the title of his uncle, will now be considered. As a general rule, it would not commence running so long as the relation of landlord and tenant, or principal and agent existed between the parties; but it would commence whenever that relation was dissolved by Col. Farrow and his uncle, or those claiming under him, had notice of the dissolution. Whenever Col. Farrow disclaimed to hold as tenant or agent under the title of his uncle, and claimed to hold adversely in his own right, his uncle would have an immediate right of entry, and the statute would commence running then, or as soon as he had notice of the hostile attitude assumed by his nephew. No definite rule can be laid down as to the proof requisite to establish such notice.

Publicly claiming by agent to hold on his own right, selling parts of the land, making conveyances, and delivering the possession, for a period of 20 years, is presumptive notice of an adverse holding.

It would depend upon the situation of the parties and the character of the acts upon the part of the nephew, which placed him in a hostile attitude as to the title of his uncle, openly and publicly claiming and treating the land as his own, alienating portions of it in fee, and delivering over the possession, and continuing such acts for more than twenty years, would, we think, after such a lapse of time, justify a presumption of notice from the time he thus placed himself in an attitude of hostility to the title of Capt. Farrow.

One in possession under a conveyance from an agent, in his own name, or as ag't, which has been

So far as the defendants, or any of them, had purchased from Col. Farrow, and obtained conveyances from him, in his own name, or as agent and attorney of his uncle, and under such conveyances had enjoyed the possession for more than twenty years, claiming to hold in their

own right, as to such defendants, we think they would be protected by their twenty years' possession.

In coming to this conclusion we have taken into consideration that Col. Farrow was the agent of his uncle, settling tenants upon his land, defending against, quieting and acquiring adversary titles, taking conveyances in his own name. In view of such facts and circumstances, after a lapse of twenty years, notice and acquiescence on the part of Capt. Farrow and his heirs, of such sales and conveyances, should be presumed.

If Col. Farrow acquired adversary titles after the judgments of eviction had been obtained under them against him, or against him and his uncle, but no actual eviction, and afterwards continued to treat and hold the land to which such titles had been obtained, as he had done before, and as he held the other lands of his uncle, as his agent, the titles thus acquired by him would of themselves oppose no obstacle to the plaintiff's recovery in this action, notwithstanding he had taken the conveyances in his own name.

But if, after the acquisition of such titles he had claimed to hold the land under them in his own right, and not under the title of his uncle, such titles, we think, might be relied upon in bar of the plaintiff's action, as to so much of the land in controversy as might be embraced by them, and for that purpose the evidences of such titles would be competent testimony. If such titles were acquired by Col. Farrow, in whole or in part by his uncle's funds or means, that fact would have a tendency to rebut any mere presumption as to his subsequently holding such lands in his own right.

In view of the principles which we thus recognize as applicable to this case, we are of opinion that the instructions of the Court below are not such a full and unambiguous exposition of the law as secured to the plaintiffs a fair trial before the jury.

Some of them, although they may be true in themselves, are evidently misleading in their tendency, and not applicable to any point upon which the controversy turns. Others are not warranted upon the principles recognized in this opinion.

FARROW'S HEIRS
sv
EDMUNDSON, &c

acquiesced in for more than twenty years, will be protected in the possession.

If an agent in possession has judgment of eviction against him by superior title, and is not actually evicted, but acquires the superior title, and continues to hold as agent, such acquisition of title presents no bar to a recovery in ejectment by the principal.

But if such superior title was made to the ag't and he notified the principal of his adversary holding, and so held for 20 years, the principal would be barred unless the title was acquired by the *means* of the principal.

FARROW'S HEIRS      Wherefore the judgment is reversed and the cause re-
      *vs*
EDMUNDSON, &c   manded that a new trial may be had upon principles not
inconsistent with this opinion.

*Robertson and Apperson* for appellants: *Hanson* for appellees.